**Ronald LOCKE, Petitioner,**

v.

**Jeffrey N. DILLMAN, et al., Respondents.**

Civil Action No. 11–05833.

United States District Court, E.D. Pennsylvania.

Jan. 9, 2013.

Ronald Locke, Frackville, PA, pro se.

Joshua Scott Goldwert, Philadelphia District Attorney's Office, Philadelphia, PA, for Respondents.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Ronald Locke ("Petitioner") is a prisoner at the State Correctional Institution in Frackville, Pennsylvania. Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Habeas Petition") challenging his custody. Magistrate Judge Sandra Moore Wells recommended denial of the Habeas Petition and Petitioner raised two objections. For the reasons that follow, the Court adopts Magistrate Judge Wells's Report and Recommendation.

## I. BACKGROUND

Petitioner is currently serving a prison term of 18–36 years based on convictions for third-degree murder, criminal conspiracy, and related firearms offenses. The convictions stem from an incident on December 8, 1999, in which he and a confederate chased down a man named Arian McCullough, who had just purchased marijuana from drug dealers doing business on the block where Petitioner was standing. Report and Recommendation ("R & R"), ECF No. 10, 680; Gov't's Response to Pet. For Writ of Habeas Corp. 1, ECF No. 6. Petitioner shot McCullough in the back, fatally wounding him. R & R, 680. Petitioner was convicted in the Philadelphia Court of Common Pleas on November 17, 2003. Habeas Petition, ECF No. 1, 1. He timely appealed his judgment of sentence to the Pennsylvania Superior Court on March 30, 2005, where the judgment was affirmed. R & R, 680. The Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal on September 29, 2005. *Id.*

On December 12, 2006, Petitioner, pro se, collaterally attacked his convictions under the Pennsylvania Post Conviction Relief Act ("PCRA"). *Id.* Court-appointed counsel filed an amended petition, alleging that trial counsel was ineffective for: (1) failing to file and litigate a motion to dismiss the charges against him for lack of a speedy/prompt trial; and (2) stipulating to the testimony of the Commonwealth's only eyewitness. *Id.* at 681, n. 3. On July 15, 2009, the PCRA court issued a notice of its intent to dismiss the petition, without an evidentiary hearing, and on August 21, 2009, the court dismissed the petition. *Id.* at 680. The Pennsylvania Superior Court affirmed. *Commonwealth v. Locke,* 23 A.3d 1084 (Pa.Super.Ct.2011)(table). On August 24, 2011, the Pennsylvania Supreme Court denied his appeal. *Commonwealth v. Locke,* 611 Pa. 674, 27 A.3d 1015 (Pa.2011) (table).

On September 8, 2011, Petitioner filed the instant petition, pro se, asserting several claims for federal habeas relief under 28 U.S.C. § 2254. Pet. for Writ of Habeas Corp. 1–19 (hereinafter "Habeas Pet."), ECF No. 1. Petitioner raises claims of ineffective assistance of counsel at the trial level, the direct appeal level, and the state collateral appeal level. The Commonwealth responds that Petitioner's claims should be dismissed as untimely,[1] or in the

---

1. The Commonwealth argued that Locke's habeas corpus application was untimely as it was postmarked on September 12, 2011, and the last day for timely filing was September 9, 2011. Gov't's Resp. to Pet. for Writ of Habeas Corp. 10. Under the prisoner mailbox rule, a *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court. *See Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Magistrate Judge Wells found that because Petitioner filed a copy of his "Postage Cash Withdrawal Request" signed on September 8, 2011, this was sufficient to prove that he had delivered his petition to prison officials for mailing on that date; hence, his petition was timely filed. R & R 681 n. 5. Parties have not contested the Magistrate Judge's finding with respect to this issue so the Court will not revisit it.

alternative, that his procedurally defaulted and meritless claims should be dismissed or denied. Gov't's Resp., 8–22. Upon referral, Judge Wells issued a report and recommendation to deny the Habeas Petition on the merits. R & R, 682. Petitioner objected. Pet'r's Objections, ECF No. 12. The matter is now ripe for disposition.

## II. LEGAL STANDARD

■ The Court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. Section 2254 R. 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."); see also 28 U.S.C. § 636(b)(1)(B) (2006 & Supp. IV 2011). A prisoner may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir.2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks removed)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Therefore, the Court will conduct a de novo review of those portions of the Report and Recommendation to which Petitioner objects.

On habeas review, the Court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d) (2006).

## III. DISCUSSION

Magistrate Judge Wells recommends that Petitioner's habeas claims be denied without an evidentiary hearing, and that there is no probable cause to issue a certificate of appealability.

### A. Ineffective Assistance of Counsel: Right to a Unanimous Jury Verdict

In Ground One, Petitioner asserts that his trial counsel was ineffective for failing to properly advise him of his right to a unanimous jury verdict. Habeas Pet. 8. He further asserts that his direct appellate and PCRA counsel were ineffective for failing to raise his trial counsel's ineffectiveness. Id. at 9. Respondents argue that Petitioners claims in Ground One are procedurally defaulted. Gov't's Resp. 16. The claims were never presented to any state appellate court for review, and are thus unexhausted. Id. Furthermore, Petitioner is now time-barred from pursuing state postconviction remedies. Id.

#### 1. Procedurally Defaulted Claims

■ Generally, a procedurally defaulted claim must be dismissed without review on the merits. See 28 U.S.C. § 2254(b)(1)(A). However, where a Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that the court's failure to consider the claim would result in a "fundamental miscarriage of justice," a procedurally defaulted claim may succeed. Coleman v. Thompson, 501 U.S. 722, 748, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "Cause" exists when Petitioner shows "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d

373, 381 (3d Cir.2004). In *Coleman*, the Supreme Court held that ineffective assistance of counsel on collateral review does not constitute cause to excuse a procedural default. 501 U.S. at 753–54, 111 S.Ct. 2546.

■ Since the time of Petitioner and Respondent's initial filings, the Supreme Court, in *Martinez v. Ryan*, recognized a narrow exception to its holding in *Coleman*.[2] —— U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). That is, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. Based on the failure of Petitioner's state post-conviction counsel to raise the ineffective assistance of his trial counsel on Ground One, Petitioner could establish cause to excuse his procedural default. For this reason, Magistrate Judge Wells appropriately conducted a *de novo* review of the merits of claims raised in Ground One.

### 2. *Legal Standard: Ineffective Assistance of Counsel*

■ The Sixth Amendment right to counsel is the right to effective assistance of counsel. *E.g., Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To warrant reversal of a conviction, a prisoner must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See id.* at 687, 104 S.Ct. 2052; *Holland v. Horn,* 519 F.3d 107, 120 (3d Cir.2008). The principles governing ineffective assistance claims under the Sixth Amendment apply in collateral proceedings attacking a prisoner's sentence. *See Strickland,* 466 U.S. at 697–98, 104 S.Ct. 2052.

■ To prove deficient performance, a prisoner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The Court will consider whether counsel's performance was reasonable under all the circumstances. *Id.* Furthermore, the Court's "scrutiny of counsel's performance must be highly deferential." *See id.* at 689, 104 S.Ct. 2052. That is, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." *Id.* at 689, 104 S.Ct. 2052. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

■ "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Gray,* 878 F.2d 702, 710 (3d Cir.1989). A petitioner rebuts this presumption by showing either that his counsel's "conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Thomas v. Varner,* 428 F.3d 491, 499–500 (3d Cir.2005). When the record does not disclose counsel's actual strategy the presumption is rebutted by a "showing that no sound strategy . . . could have supported the conduct." *Id.* at 500.

---

**2.** In 2005, the Third Circuit presciently arrived at the same view in *United States v. Booth,* where the court remanded the case for an evidentiary hearing after the defense attorney allegedly failed to inform defendant of the option of an open plea. The court found that the alleged behavior potentially met both the deficiency and prejudice prongs of the test for ineffective assistance of counsel.

▬▬ To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If Petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697.

### 3. *Analysis*

▬▬ "At a minimum, a defendant should be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, [and] the verdict of the jury must be unanimous...." *United States v. Lilly,* 536 F.3d 190, 198 (3d Cir.2008) (quoting *United States v. Martin,* 704 F.2d 267, 274–75 (6th Cir.1983)). In reviewing the record, Magistrate Judge Wells found that Petitioner voluntarily waived his right to a jury trial after a lengthy colloquy before the Honorable Sheila Woods–Skipper. R & R, 685–86 (quoting extensively the colloquy).[3] Judge Wells reviewed the transcript of the colloquy, along with the "Written Jury Trial Waiver Colloquy" and "Waiver of Jury Trial" forms, both of which were signed and dated November 12, 2003, and explicitly described Petitioner's right to a unanimous jury verdict in the event that he opted for a jury trial. R & R, 686, nn. 9–10. Furthermore, Petitioner's trial counsel stated, on the record, prior to the state court's colloquy, that he had reviewed these forms with Petitioner and that Petitioner understood his right to a jury trial. R & R, 686. Based on the record, Judge Wells found that Petitioner failed to demonstrate any deficiency in his trial counsel's performance. R & R, 686.

Petitioner objects to Judge Wells's finding, arguing that the record does not show full discussion between Petitioner and his counsel regarding his right to a jury trial. Pet'r's Objections 1. He further argues that he is entitled to an evidentiary hearing as the current record is undeveloped and therefore legally inadequate. *Id.* at 2. This argument is unavailing, however, where there are no material facts in dispute and the record is already sufficient to make the determination that counsel was effective.[4]

The Court agrees with Judge Wells's finding that trial counsel effectively informed Petitioner of his right to a unanimous jury verdict. Petitioner cites Pennsylvania law in arguing that the Court should look to the totality of the circumstances surrounding Petitioner's waiver of

---

**3.** During the colloquy, the Court asked Petitioner whether he understood that he was waiving his right to a jury trial, whether he had reviewed the contents of the written jury trial waiver colloquy form and the waiver of jury trial form with his lawyer, whether he had signed said documents, whether his lawyer his lawyer had explained to him "how a jury is selected" and the "jury deliberation process," and whether he was satisfied with the representation of his lawyer. R & R, 685–86.

**4.** The cases Petitioner cites involve instances in which the existing record was insufficient and Petitioner alleged facts, which if proved, would entitle him to relief. *See, e.g., Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (finding that evidentiary hearing was necessary where a factual dispute remained over the voluntariness of petitioner's prior confession). Here, Petitioner alleges that the existing facts are insufficient to show that his trial counsel adequately informed him of his right to a unanimous jury verdict. The Court, however, disagrees.

a jury trial, and thus should look beyond the on-the-record colloquy. Pet'r's Objections 2 (citing *Commonwealth v. Foreman,* 797 A.2d 1005, 1015 (Pa.Super.2002)). In the very case Petitioner cites, however, the Superior Court of Pennsylvania deemed it sufficient that the appellant had signed a waiver-of-jury-trial form and did not object when his counsel indicated to the court that appellant desired a bench trial. *Foreman,* 797 A.2d at 1015. Based on a review of the record in the instant case, it is clear that Petitioner knowingly, intelligently, and voluntarily waived his right to a jury trial and an unanimous jury verdict. As Judge Wells stated, the record belies Petitioner's claim that trial counsel's performance was deficient. R & R, 687.

Because trial counsel was not ineffective for failing to adequately advise Petitioner of his right to a unanimous jury verdict, direct appellate and PCRA counsel cannot be deemed ineffective for failing to present an unmeritorious claim regarding trial counsel's performance. *See Parrish v. Fulcomer,* 150 F.3d 326, 328–29 (3d Cir. 1998).

B. *Ineffective Assistance of Counsel: Failing to File and Litigate a Motion to Dismiss All Charges for Lack of a Speedy Trial*

██ In his initial habeas petition, Petitioner asserted that his trial counsel was ineffective for failing to file and litigate a motion to dismiss all charges filed against him due to the lack of a speedy trial. Habeas Pet. 10. The Pennsylvania Superior Court reviewed this claim on Petitioner's appeal of his PCRA petition and found that the underlying claim lacked merit. Therefore, trial counsel could not be deemed ineffective for failing to pursue the unmeritorious claim. In her report and recommendation, Judge Wells determined that the Court is bound by the state appel-

late court's finding regarding Petitioner's underlying claim because it involved a state procedural rule. R & R, 689. As such, Judge Wells recommended that the Court deny Petitioner's habeas claim since trial counsel cannot be deemed ineffective for failing to pursue an unmeritorious claim. *Id.* (citing *Priester v. Vaughn,* 382 F.3d 394, 402 (3d Cir.2004)).

In his second objection to Judge Well's report and recommendation, Petitioner appears to state that he intended to assert an ineffective assistance of counsel claim involving the violation of his constitutional right to a speedy trial, rather than of a state procedural rule. Pet'r's Objections 3–4. It appears that in his initial PCRA petition in the state appellate court, Petitioner raised speedy trial claims under both state law and the U.S. Constitution, but the Pennsylvania Superior Court only engaged in analysis under state law. *See* CP–51–CR1003451–2000, Am. Pet. Under Post–Conviction Relief Act, 2; *Commonwealth v. Locke,* CP–51–CR–1003451–2000, at 5–8, 23 A.3d 1084 (Pa.Super.Ct. Jan. 19, 2011). Judge Wells similarly only addressed Petitioner's state law claim. R & R, 688–89. Below, the Court undertakes a constitutional analysis of Petitioner's claim, but the outcome remains the same: Petitioner did not suffer a violation of his right to a speedy trial.

██ In considering a habeas petitioner's Sixth Amendment rights, the Third Circuit has stated, "[w]e can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee." *Wells v. Petsock,* 941 F.2d 253 (3d Cir.1991). Instead, courts use the four-factor test established by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We consider: (1) the

length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) whether the defendant suffered prejudice as a result of the delay. *Id.* at 530, 92 S.Ct. 2182.

The length of the complained of delay is, to a certain degree, a threshold issue, because without any delay, there is no need to examine the other factors. *Id.* The inquiry is case-specific as different lengths of delay will be tolerated depending on the severity level of the crime alleged. *Id.* at 531, 92 S.Ct. 2182. Courts look at whether the case was prosecuted "with customary promptness." *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

In this instance, 503 days of the delay were requested by Petitioner's trial counsel. *Commonwealth v. Locke*, CP–51–CR–1003451–2000, at 6–7 (Pa.Super.Ct. Jan. 19, 2011). "When the reason for the delay originates with the defendant or his counsel, such delay will not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed." *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir.1991). Therefore, the 503 day delay requested by Petitioner's trial counsel does not enter into the analysis for whether Petitioner's rights were violated. The 329 days of delay "caused by congested court dockets [and] judicial delay," however, are considered. *Commonwealth v. Locke*, CP–51–CR–1003451–2000, at 6–7. "Unintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated." *Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (citations omitted).

Turning to the third and fourth factors to be considered under the *Barker* test, Petitioner did not assert his right to a speedy trial until his collateral appeal, nor has he sufficiently stated how he was prejudiced by the delay he suffered. In his objections to Judge Well's Report and Recommendation, Petitioner states that as a result of the Commonwealth's failure to bring him to trial in a timely manner, he was unable to secure the testimony of potentially exculpatory witnesses and good character witnesses. Pet'r's Objections 3–4. Petitioner does not specify who these witnesses are, why they were unavailable at the time of trial, or what they would have said if they had testified. The Court cannot find that Petitioner was prejudiced based on these vague allegations. Consequently, Petitioner has not sufficiently shown that his constitutional right to a speedy trial was violated.

Trial counsel is not ineffective for failing to raise an unmeritorious claim. *See Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir.2004); *Parrish v. Fulcomer*, 150 F.3d 326, 328–29 (3d Cir.1998). The Court agrees with Judge Wells that Petitioner's ineffective assistance of counsel claim is unavailing.

## IV. CERTIFICATE OF APPEALABILITY

The Court will not issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

## V. CONCLUSION

For the reasons provided, the Court approves and adopts Judge Wells's Report and Recommendation, overrules Petitioner's objections thereto, and denies the Petition for a Writ of Habeas Corpus without

an evidentiary hearing. The Court will not issue a Certificate of Appealability.

## ORDER

**AND NOW,** this **9th** day of **January, 2013,** for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** as follows:

(1) The Report and Recommendation (ECF No. 10) is **APPROVED** and **ADOPTED;**

(2) Petitioner's Objections to the Report and Recommendation (ECF No. 12) are **OVERRULED;**

(3) The Application for a Writ of Habeas Corpus (ECF No. 1) is **DENIED** and **DISMISSED WITH PREJUDICE;**

(4) A certificate of appealability shall not issue; and

(5) The Clerk shall mark this case **CLOSED.**

**AND IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS, United States Chief Magistrate Judge.

Presently before this court is a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Ronald Locke ("Petitioner"), currently incarcerated at the State Correctional Institution at Frackville, PA, seeks habeas relief based on alleged ineffective assistance of counsel claims. The Honorable Eduardo Robreno referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner's habeas claims be DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY [1]

The facts leading to Plaintiff's arrest and conviction, as summarized by the Pennsylvania Superior Court, follow:

On December 8, 1999, at approximately 6:26 p.m., the decedent Andre McCullough was shot in the back and killed in the area of 3927 North 7th Street in the City and County of Philadelphia. According to Louis Orlando Collazo (a/k/a Julio Delgado), an eyewitness to the shooting, [Petitioner], who he recognized from seeing 2–3 times a week in the neighborhood, and another man were standing together talking when the decedent approach[ed] a group of males selling drugs with money in his hand, to purchase two bundles of marijuana from them. Mr. Collazo heard [Petitioner] and the male with him say "Let's hold him up." The two males began to follow the decedent. The decedent began to run as did the other males. Mr. Collazo, who had been riding his bike up 7th street, experienced an equipment malfunction and was forced to stop when he reached the middle of 7th and Pike Streets. At that point, he heard two gun shots. He looked up to see [Petitioner] with a gun in his hand and watched as [Petitioner] passed the gun to the other male. The two then left the area traveling down Pike Street. [Mr.] Collazo did not immediately contact police about what he had witnessed because of his own criminal history. However, he was picked up on a drug charge a short time later, and told the police about the incident. Mr. Collazo was shown over one hundred [and] twenty

---

**1.** The facts contained in this background and procedural history were gleaned from the Petition for Writ of Habeas Corpus ("Pet."), the Commonwealth's Response ("Resp.") and all exhibits attached thereto, and Petitioner's Reply ("Pet'r Reply").

photos and was able to pick [Petitioner] out of the array. [Petitioner] was arrested, convicted of all charges and sentenced to 18–36 years incarceration. *Commonwealth v. Locke*, 875 A.2d 389, No. 1198 EDA 2004, slip op. at 1–2 (Pa.Super.Ct. March 30, 2005) ("2005 Super. Ct. Op."); Commonwealth Exhibit ("Comm. Ex.") B.

Petitioner timely appealed this judgment of sentence to the Pennsylvania Superior Court;[2] on March 30, 2005, the intermediate state court affirmed the judgment of sentence. *Id.* at 7. Petitioner's request for allowance of appeal (*"allocatur"*) from the Pennsylvania Supreme Court was denied on September 29, 2005. Resp. at 2.

Next, on December 12, 2006, Petitioner, *pro se*, filed a timely petition for collateral relief, pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. Ann. §§ 9541–46. Resp. at 2. Court-appointed counsel filed an amended petition.[3] *Commonwealth v. Locke*, 23

A.3d 1084, No. 2623 EDA 2009, slip op. at 3 (Pa.Super.Ct. Jan. 19, 2011) ("2011 Super. Ct. Op."); Comm. Ex. D at 3. On July 15, 2009, the PCRA court issued a notice of its intent to dismiss the petition, without an evidentiary hearing, and on August 21, 2009, the PCRA court dismissed the petition. *Id.* Petitioner appealed the dismissal;[4] however, the Pennsylvania Superior Court affirmed on January 19, 2011. *Id.* at 9. Petitioner sought *allocatur* from the Pennsylvania Supreme Court, but was denied discretionary review on August 24, 2011. Resp. at 3.

■ On September 8, 2011,[5] Petitioner filed a petition asserting several claims for federal habeas relief under 28 U.S.C. § 2254. Pet. at 1–19. He alleges *inter alia* that: (1)(a) trial counsel was ineffective for failing to object to the trial court's failure to inform him that he was entitled to an unanimous jury verdict; (1)(b) direct appellate counsel was ineffective for failing

**2.** Petitioner, on direct appeal, challenged:

> (1) whether there was sufficient evidence to convict him of murder; and
> (2) whether the verdict is against the weight and credibility of the evidence.

Comm. Ex. A at 2.

**3.** Petitioner, in his amended PCRA petition, alleged trial counsel was ineffective for:

> (1) failing to file and litigate a motion to dismiss the charges against him for lack of a speedy/prompt trial; and
> (2) stipulating to the testimony of Louis Orlando Collazo, the only Commonwealth eyewitness to the incident.

Resp. at 2; Comm. Ex. C at 3–7.

**4.** Petitioner, on PCRA appeal, alleged that the trial court erred in failing to grant him an evidentiary hearing based upon his meritorious claims that his trial counsel was ineffective for:

> (1) failing to file and litigate a motion to dismiss the charges against him for lack of a speedy/prompt trial; and

> (2) stipulating to the testimony of Louis Orlando Collazo, the only Commonwealth eyewitness to the crime.

Comm. Ex. D at 3–9.

**5.** A *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir.1998). Petitioner's habeas petition was docketed on September 15, 2011. Pet. at 1. However, Petitioner signed his habeas petition on September 7, 2011 and executed the petition on September 8, 2011. Pet. at 19; Pet'r Reply at 1–2. The Commonwealth contends that Petitioner must prove that he delivered his federal filing to prison officials on September 9, 2011. Resp. at 8–10. Petitioner has filed a copy of his "Postage Cash Withdrawal Request" signed on September 8, 2011 as proof that he submitted his petition for mailing on September 8, 2011. Pet'r Reply Ex. A. Based on the postage evidence, this court finds that Petitioner delivered the habeas petition to prison officials for mailing on September 8, 2011, hence, his petition was timely filed. *See Burns*, 134 F.3d at 113.

to allege trial counsel's ineffectiveness for failing to object to the trial court's failure to inform him that he was entitled to an unanimous jury verdict; (1)(c) PCRA counsel was ineffective for failing to allege trial counsel's ineffectiveness for failing to object to the trial court's failure to inform him that he was entitled to a unanimous jury verdict; and (2) trial counsel was ineffective for failing to file and litigate a motion to dismiss all charges for lack of a speedy and prompt trial. ("Pet.") at 8–10. The Commonwealth contends that Petitioner's claims should be dismissed as untimely unless he can establish that he filed his federal habeas petition on September 9, 2011. Resp. at 8–10. This court finds that Petitioner is entitled to the "mailbox rule" and his claims are timely. *See supra* n. 5. The Commonwealth further contends that Petitioner's procedurally defaulted and meritless claims should be either dismissed or denied. Resp. at 11–22. This court agrees.

## II. *DISCUSSION*

### A. Procedurally Defaulted Claims— Grounds One (a), (b), and (c)

#### 1. Procedural Default

■ A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County,* 959 F.2d 1227, 1230 (3d Cir.1992). However, in light of a May 9, 2000 order of the Pennsylvania Supreme Court, it is no longer necessary for Pennsylvania inmates to seek allowance of appeal from the Pennsylvania Supreme Court in order to exhaust state remedies. *See Lambert v. Blackwell,* 387 F.3d 210, 233–34 (3d Cir. 2004).

■ If a habeas petitioner has presented his claim to the state courts but the state courts have declined to review the claim on its merits because the petitioner failed to comply with a state rule of procedure when presenting the claim, the claim is procedurally defaulted. *See Harris v. Reed,* 489 U.S. 255, 262–63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). When a state court has declined to review a claim based on a procedural default and the claim is not later addressed on the merits by a higher court, the habeas court must presume that the higher state court's decision rests on the procedural default identified by the lower state court. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Finally, when a habeas petitioner has failed to exhaust a claim and it is clear that the state courts would not consider the claim because of a state procedural rule, the claim is procedurally defaulted.[6] *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. 2546. In order to demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to

---

6. A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review. *See Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir.2001).

comply with the state's procedural rule." *Id.* at 753, 111 S.Ct. 2546 (citation omitted). Examples of cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. *Id.* at 753–54, 111 S.Ct. 2546. Recently, the Supreme Court held that a petitioner can demonstrate cause to excuse his procedural default of an ineffective assistance of trial counsel claim if he alleges that counsel was ineffective in his post-conviction proceedings for failing to raise this claim. *See Martinez v. Ryan,* —— U.S. ——, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012).

 The fundamental miscarriage of justice exception is limited to cases of "actual innocence." *Schlup v. Delo,* 513 U.S. 298, 321–22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In order to demonstrate that he is "actually innocent," the petitioner must present new, reliable evidence of his innocence that was not presented at trial.[7] *Id.* at 316–17, 324, 115 S.Ct. 851. The court must consider new evidence of innocence along with the entire record, even that which was excluded or unavailable at trial. *Id.* at 327–28, 115 S.Ct. 851. Thereafter, the petitioner's defaulted claims can be reviewed only if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851.

The court must consider whether Petitioner's default of Grounds One (a), (b), and (c) can be excused.

## 2. Grounds One (a), (b) and (c)—Ineffective Assistance of Counsel for Failing to Object to the Court's Failure to Advise Petitioner of His Right to an Unanimous Jury Trial

In Ground One (a) Petitioner alleges that his trial counsel was ineffective for failing object to the trial court's failure to advise him that he was entitled to a unanimous jury trial. Pet. at 8. Petitioner further asserts in Ground One (b) and (c) that his direct appellate and PCRA counsel were ineffective for failing to challenge his trial counsel's effectiveness. Pet. at 9. The Commonwealth argues that all of Petitioner's claims presented in Ground One are unexhausted and procedurally defaulted. *See* Resp. at 17. These claims, not presented on direct appeal or in Petitioner's PCRA appeal, have never been presented to any state appellate court for review. *See supra* n. 2, and 4. Accordingly, these claims are unexhausted. Petitioner is time-barred from raising the claims presented in Grounds One (a), (b) and (c) in a new PCRA petition, hence, these claim are procedurally defaulted, as well.[8] *See Keller,* 251 F.3d at 415.

Since Petitioner's claims asserted in Grounds One (a), (b), and (c) are procedurally defaulted, the claims must be dismissed, unless Petitioner demonstrates both "cause" for the default *and* "actual

---

7. This evidence need not be directly related to the habeas claims the petitioner is presenting because the habeas claims themselves need not demonstrate that he is innocent. *See Schlup,* 513 U.S. at 315, 115 S.Ct. 851.

8. Petitioner's conviction became final on December 29, 2005, upon the expiration of the ninety day period to seek *certiorari* from the United States Supreme Court after the Pennsylvania Supreme Court denied review during his direct appeal on September 29, 2005. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(1), (3); S.Ct. R. 13(1). Petitioner does not implicate any alternative starting date for this defaulted claim hence, the PCRA statute of limitations expired for it on December 29, 2006. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(1).

prejudice" as a result of the alleged violation of federal law, or shows that this court's failure to consider the claim will result in a "fundamental miscarriage of justice." *Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner's allegations concern his counsels' ineffectiveness both at the trial and collateral review levels. A petitioner can demonstrate cause to excuse his procedural default of an ineffective assistance of trial counsel claim if he alleges that counsel was ineffective in his post-conviction proceedings for failing to raise this claim. *See Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012). Based upon the Supreme Court's ruling in *Martinez*, Petitioner might be able to establish *"cause"* to excuse his procedural default of these claims. *See id.* In the interest of justice, the court will conduct a *de novo* review of the merits of Petitioner's claims presented in Ground Ones (a), (b) and (c) in accordance with 28 U.S.C. § 2254(b)(2).

## B. De Novo Review—Ineffective Assistance of Counsel Claims Grounds One(a), (b) and (c)

### 1. Standard for Ineffective Assistance of Counsel

Grounds One (a), (b) and (c) assert ineffective assistance of counsel claims, which must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. 2052. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, 104 S.Ct. 2052, but it is less than a preponderance of the evidence. *Id.* at 693, 694, 104 S.Ct. 2052.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697, 104 S.Ct. 2052. Further, counsel will not be deemed to be ineffective for failing to present an unmeritorious claim or objection. *Parrish v. Fulcomer*, 150 F.3d 326, 328–29 (3d Cir.1998); *Moore v. Deputy Commrs. of SCI–Huntingdon*, 946 F.2d 236, 245 (3d Cir.1991).

### 2. Ineffective Assistance of Counsel for Failure to Object to the Trial Court's Failure to Advise Petitioner of His Right to an Unanimous Jury Verdict—Ground One (a)

In Ground One (a) Petitioner asserts that his trial counsel was ineffective for failing to object to the trial court's failure to advise him of his right to an unanimous jury verdict. Pet. at 8. In order for Petitioner to waive his right to a jury trial, he

must "be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *See United States v. Lilly,* 536 F.3d 190, 198 (3d Cir.2008) (citing *United States v. Martin,* 704 F.2d 267, 274–75 (6th Cir.1983)). Since this claim was never reviewed on its merits, this court must conduct a *de novo* review of its merits in accordance with 28 U.S.C. § 2254(b)(2).

First, the record belies Petitioner's claim. On November 12, 2003, Petitioner appeared before the Honorable Sheila Woods–Skipper and voluntarily waived his right to a jury trial following a lengthy colloquy. (N.T. Trial, 11/12/03 at 3–8). During the colloquy, Judge Sheila Woods–Skipper questioned Petitioner regarding his decision to waive his right to a jury trial. The following exchange transpired:

The Court: My name is Judge Sheila Woods–Skipper and your case is here today for disposition. I understand from your lawyer that you wish to waive your right to a jury trial today and have a trial before me sitting alone without a jury. Is that your understanding of what is going to happen in court today?

[Petitioner]: Yes.

The Court: Do you understand that you are presumed to be innocent, you do not have to waive your right to a jury trial and you could have a jury trial if you so desire. Do you understand that?

[Petitioner]: Yes.

The Court: Before I can allow you to waive your right to a jury trial, I must ask you certain questions to make sure that you understand the rights you are giving up. First how old are you?

[Petitioner]: Twenty-three.

The Court: How far did you go in school?

[Petitioner]: 9th [grade].

The Court: Do you read, write, and understand English?

[Petitioner]: Yes.

The Court: Are you today under the influence of any drugs or alcohol?

[Petitioner]: No.

The Court: Have you ever been confined to a mental institution or treated for a mental illness?

[Petitioner]: No.

The Court: I am holding up then what is known as a written jury trial waiver colloquy form as well as a single page waiver of jury trial form. Did your lawyer review these forms with you?

[Petitioner]: Yes.

The Court: And on page three of the written page—strike that. On the back of that form, is that your signature?

[Petitioner]: Yes.

The Court: And on the single page form, is that your signature?

[Petitioner]: Yes.

The Court: Did your lawyer explain to you your right to have a jury trial?

[Petitioner]: Yes.

The Court: Did he tell you how a jury is selected and explain to you the jury deliberation process?

[Petitioner]: Yes.

The Court: And did you understand all of that concerning the jury trial?

[Petitioner]: Yes.

\*　　　\*　　　\*

The Court: And are you satisfied with the representation of your lawyer?

[Petitioner]: Yes.

The Court: And knowing all of the things that I have explained to you

and all of the things that your lawyer has explained to you, are you still willing or do you still wish to waive your right to a jury trial today?

[Petitioner]: Yes.

The Court: Are you doing so of your own free will?

[Petitioner]: Yes.

(N.T. Trial, 11/12/03 at 3–8). Furthermore, the record contains Petitioner's "Written Jury Trial Waiver Colloquy"[9] and "Waiver of Jury Trial" form,[10] both of which were signed and dated November 12, 2003 by Petitioner, Judge Sheila Woods–Skipper and Assistant District Attorney Carlos Vega. Judge Sheila Woods–

Skipper reviewed the waiver documents and relied upon them in court in concluding that Petitioner understood his rights to a jury trial and an unanimous jury verdict. *Id.* at 5–9. At the conclusion of the colloquy, Petitioner's trial counsel stated, on the record, that, prior to the court's colloquy, he had reviewed the "Written Jury Trial Waiver Colloquy" and "Waiver of a Jury Trial" form with Petitioner and that Petitioner understood his right to a jury trial. *Id.* at 8; *see also supra* ns. 9–10.

Based upon a thorough review of the record, Petitioner has failed to demonstrate any deficiency in his trial counsel's performance. During the colloquy, Petitioner testified that he was satisfied with

---

**9.** Petitioner's "Written Jury Trial Waiver Colloquy" indicates that the following relevant questions were asked:

> 21. Do you understand that you also have the right to choose whether you want to be tried by a jury or by a judge sitting without a jury?
> 22. Do you understand that if you choose to have a jury trial, the judge will send for a panel of thirty or forty prospective jurors drawn at random from the Voter Registration rolls of the County?
> 23. Do you understand that the prospective jurors will come down to the courtroom and that you, your attorney, the District Attorney and the Judge will then proceed to pick a jury of twelve people from this group of thirty or forty prospective jurors?
> 24. Do you understand that you have an absolute right to personally participate in selecting a jury?
>
> \* \* \*
>
> 33. Do you understand that at the end of the jury selection process a jury of twelve persons will have been selected? You will also select two alternate jurors who will only serve if any of the original jurors becomes ill?
> 34. Do you understand that the jurors will listen to the evidence in the case and then they will go in a separate room all by themselves, discuss the case, and then vote on whether to find you guilty or not guilty?

> 35. Do you understand that if you are tried by a jury you cannot be convicted unless all twelve jurors are convinced beyond a reasonable doubt that you are guilty? This is because a jury verdict is required by law to be unanimous which means that all twelve jurors must agree on the verdict, thus if all twelve vote "guilty", the verdict is ["]guilty" and if all twelve vote "not guilty" the verdict is "not guilty".

Petitioner initialed each page containing the questions on the "Written Jury Trial Waiver Colloquy" and he affirmed, by answering "Yes", that he understood his rights to both a jury trial and an unanimous jury verdict.

**10.** Petitioner's signed "Waiver of a Jury Trial" form states:

> AND NOW, this 12th day of November 2003, comes [Petitioner] and pleads not guilty, and with the consent of his attorney, and the Commonwealth and the approval of the Court, waives a jury trial and elects to be tried by a judge without a jury, fully understanding that if he were tried by a jury:
> (a) the jury would be chosen from members of the community thereby producing a jury of his peers;
> (b) any verdict rendered by a jury must be unanimous, that is, all twelve jurors must agree before they can return a verdict of guilty; and
> (c) [Petitioner] would be permitted to participate in the selection of the jury.

his trial counsel's performance. *Id.* at 7–8. Petitioner further confirmed in court that he: (1) was advised by his trial counsel of his right to a jury trial, (2) understood both how a jury is selected and the jury deliberation process, and (4) voluntarily signed a "Written Jury Trial Waiver Colloquy" and "Waiver of a Jury Trial" form after reviewing these documents with his trial counsel. *Id.* at 5–7; *see also supra* ns. 9–10. After the lengthy colloquy, Judge Sheila Woods–Skipper determined that Petitioner knowingly, intelligently and voluntarily waived his right to a jury trial and an unanimous jury verdict. *Id.* at 9. Petitioner testified that he was pleased with his trial counsel's adequate performance. *Id.* at 7–8. The record belies Petitioner's present allegation that trial counsel's performance was deficient. Since Petitioner cannot establish the first prong of the *Strickland* test based on this claim, consideration of the second prong is unnecessary. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Additionally, trial counsel cannot be deemed ineffective for failing to present Petitioner's unmeritorious claim. *See Parrish,* 150 F.3d at 328–29; *Moore,* 946 F.2d at 245. Ground One (a) therefore, should be denied.

**3. Ineffective Assistance of Counsel for Failure to Allege Trial Counsel's Ineffectiveness—Grounds One (b) and (c)**

In Grounds One (b) and (c) Petitioner alleges that his direct appellate and PCRA counsel were ineffective for failing to assert trial counsel's ineffectiveness. Pet. at 9. As discussed *supra,* trial counsel's performance was not deficient for failing to object to the trial court's alleged failure to advise Petitioner of his right to a jury trial and an unanimous jury verdict. Direct appellate and PCRA counsel cannot be deemed ineffective for failing to present an unmeritorious claim regarding trial counsel's performance. *See Parrish,* 150 F.3d at 328–29; *Moore,* 946 F.2d at 245. Thus

baseless, Grounds One (b) and (c) do not warrant habeas relief.

**C. Merits of Exhausted Claim— Ground Two**

**1. The AEDPA Standard of Review**

The habeas statute, as amended by AEDPA, provides that this court cannot grant habeas relief on a claim that has been adjudicated by a state court unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1)-(2). The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

▮▮▮▮ A state court's adjudication of a claim is contrary to United States Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In determining whether a state court's decision was contrary to Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*). Instead, state court decisions should be "given the benefit of the doubt." *Id.* In this

regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam*). All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

 If, however, the state court does correctly identify the governing United States Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams*, 529 U.S. at 406, 120 S.Ct. 1495. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407–08, 120 S.Ct. 1495. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411, 120 S.Ct. 1495. Instead, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* When deciding whether a state court's application of Supreme Court precedent was reasonable, it is permissible to consider the decisions of lower federal courts which

have applied clearly established Supreme Court precedent. *See Marshall v. Hendricks*, 307 F.3d 36, 71 n. 24 (3d Cir.2002); *Moore v. Morton*, 255 F.3d 95, 104 n. 8 (3d Cir.2001).

The Supreme Court addressed the AEDPA's factual review provisions in *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). In *Miller–El*, the Supreme Court interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings." *Id.* at 340, 123 S.Ct. 1029. Yet, the habeas court can "disagree with a state court's credibility determination." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 519, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (rejecting state court's factual determination under § 2254(e)(1) and § 2254(d)(2)). If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted under § 2254(d)(2).[11] *Lambert v. Blackwell*, 387 F.3d at 235.

## 2. Ground Two–Ineffective Assistance of Counsel for Failing to File and Litigate a Motion to Dismiss All Charges for Lack of a Speedy Trial

Petitioner asserts in Ground Two that his trial counsel was ineffective for failing to file and litigate a motion to dismiss all charges filed against him due to lack of a speedy trial. Pet. at 10. The Pennsylvania

---

**11.** Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert v. Blackwell*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear

and convincing evidence by way of a hearing in federal court if he or she satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must be weighed under the overarching standard of § 2254(d)(2). *Lambert*, 387 F.3d at 235–36.

Superior Court reviewed this claim on Petitioner's appeal of his PCRA petition and found that Petitioner's underlying claim lacked merit and thus trial counsel could not be deemed ineffective for failing to pursue an unmeritorious claim.[12] 2011 Super. Ct. Op. at 5–8. The Pennsylvania Superior Court concluded that Petitioner's underlying claim incorrectly asserted a violation of Pennsylvania Rule of Criminal Procedure ("Pa. R.Crim.P.") 600(A)(3).[13] *Id.* The Pennsylvania Superior court found that a Pa.R.Crim.P. 600(A)(3) violation did not occur because of two factors. First, 503 days of the delay were requested by Petitioner's own trial counsel. *Id.* at 6–7. Second, 329 days of the delay were "caused by congested court dockets [and] judicial delay" which periods of time were "excludable from the Rule 600 calculation." *Id.*

The state appellate court found that, due to the adjusted run dates, Petitioner's trial could have commenced as late as January 24, 2004. His trial which, reasonably, commenced on November 12, 2003, thus, occurred well within the requirements of Pa. R.Crim.P. 600(A)(3). *Id.* This court is bound by the state courts' finding regarding Petitioner's underlying claim, because that claim involves a state procedural rule. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (federal courts cannot review a habeas claim that involves a state court's examination and resolution of a state law issue). Further, since Petitioner's underlying claim lacks merit, trial counsel cannot be deemed ineffective for failing to pursue this claim. *See Priester v. Vaughn,* 382 F.3d 394, 402 (3d Cir.2004). Petitioner is not entitled to habeas relief.

## III. CONCLUSION

Accordingly, I make the following:

---

12. The Pennsylvania Superior Court specifically found that:

> While [Petitioner] does not challenge the PCRA court's calculation of the delays, he does assert that the court improperly excluded 329 days attributable to the trial court because judicial delay is not excludable time. We disagree. This Court has stated that "[i]t is well-settled that the Commonwealth cannot control the schedule of the trial courts and that therefore '[j]udicial delay can support the grant of an extension of the Rule [600] run[ ]date.'" *Commonwealth v. Trippett,* 932 A.2d 188, 198 (Pa.Super.2007) (citing *Commonwealth v. Preston,* 904 A.2d 1, 14 (Pa.Super.2006) (stating "[j]udicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like'")).
>
> In the present case, the record supports the Commonwealth's claim that on at least four occasions, [Petitioner's] trial was scheduled and the Commonwealth was ready to proceed, but a continuance was required be-

cause the trial judge was presiding over another matter. We agree with the Commonwealth that it had no control over the trial judge's schedule and, accordingly, the PCRA court properly excluded the 329 days attributable to the trial court for Rule 600 purposes.

> In sum, [Petitioner's] trial began before the adjusted run date and, as such there was no Rule 600 violation. Consequently, [Petitioner's] [ineffective assistance of counsel] allegation fails the first prong of the ineffectiveness test because his underlying claim is not of arguable merit. Therefore, the PCRA court did not err in denying [Petitioner] an evidentiary hearing on this issue.

2011 Super. Ct. Op. at 7–8.

13. Pa.R.Crim.P. 600(A)(3) provides that: "[t]rial in a court in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed." In accordance with Pa.R.Crim.P. 600(G), Defense counsel can apply to the court for a dismissal of charges with prejudice if Pa.R.Crim.P. 600(A) is violated.

## RECOMMENDATION

AND NOW, this 31st day of May, 2012, for the reasons contained in the preceding report, it is hereby RECOMMENDED that this Petitioner for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, be DENIED, without an evidentiary hearing. Petitioner has not demonstrated that any reasonable jurist could find this court's procedural ruling debatable, nor shown any denial of a Constitutional right; hence, there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation within ten (10) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

IT BE SO ORDERED.

May 31, 2012.